## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| JOSE A. GARZA, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 4:10-2222 |
| | § | |
| MICHAEL J. ASTRUE, | § | |
| COMMISSIONER OF SOCIAL | § | |
| SECURITY, | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM AND ORDER

In this case seeking judicial review of denial of Supplemental Security Income benefits, Plaintiff Jose A. Garza has filed a Motion for Summary Judgment [Doc. # 16] ("Plaintiff's Motion").  Defendant Michael J. Astrue, Commissioner of Social Security, has filed a Cross Motion for Summary Judgment [Doc. # 17] ("Defendant's Motion").   The motions now are ripe for decision.  Having considered the parties' briefing, the applicable legal authorities, and all matters of record, the Court concludes that Plaintiff's Motion should be **denied** and Defendant's Motion should be **granted**.

## I.     BACKGROUND

### A.     Procedural Background

Garza filed an application for Supplemental Security Income ("SSI") benefits

with the Social Security Administration ("SSA") on June 6, 2008.  Garza alleged disability beginning on January 1, 2003.  After being denied benefits initially and on reconsideration, Garza timely requested an administrative hearing before an Administrative Law Judge ("ALJ") to review the decision.

ALJ Gary J. Suttles held a hearing on July 8, 2009, in Houston, Texas.[1] Wallace A. Stanfill, a vocational expert, appeared and testified at the hearing.  Garza also appeared and testified.  In a decision dated July 31, 2009, the ALJ denied Garza's application for benefits.[2]  On May 24, 2010, the Appeals Council denied Garza's request for review, rendering the ALJ's determination final.  Garza filed this case on June 23, 2010, seeking judicial review of the Commissioner's denial of his claim for benefits.

### B.    Factual Background

Garza argues that he is unable to work because of anxiety, nervousness, fatigue, confusion, and memory problems, and because he feels panicked and anxious when around people outside his family.  Based on his application dated June 6, 2008, he is eligible for SSI benefits beginning on January 25, 2008.[3]  The medical evidence of

---

[1]     R. 33-68.

[2]     R. 20-32.

[3]     The ALJ found that, because of a previous SSI application and ALJ decision dated
(continued...)

record shows that, since a time before his eligibility date, Garza has been diagnosed with and treated for anxiety, depression, and sleep apnea, among other conditions. The record also shows that Garza has been prescribed multiple medications for his mental impairments, many of which he stopped taking after less than one week.

In March 2008, Plaintiff was treated at the Baytown Community Health Center for complaints of confusion, anxiety, depression, and fatigue. The records indicate that he had been prescribed Buspar, but stopped taking it after two days because it made him sleepy. He also was prescribed Celexa but only took it for one week. He was started on Effexor and told to keep his psychiatry appointment in April.[4]

On April 21, 2008, Garza was treated by Christie Ybarra, MD.[5] Garza reported that he was not able to tolerate medications and was currently taking none. Dr. Ybarra's notes indicate that Garza had stopped Effexor after one week because "he felt weaker," that he had picked up Paxil in Mexico and taken it for one week, that he

---

[3]      (...continued)
January 24, 2008, the relevant period of eligibility for Garza's application dated June 6, 2008, was from January 25, 2008, and forward.  R. 23.

[4]      R. 226-27.  The medical records from March 2008 reference a previous appointment with Dr. Andrew Johnson, at which "Dr. Johnson stopped Clonazepam and refused refill secondary to abuse suspicion."  R. 227.  *See* R. 228 (on December 13, 2007, Dr. Johnson stated "I am concerned patient is abusing meds, so I am not comfortable prescribing addictive meds to patient—my fears might be wrong, so future providers should judge for themselves about addictive meds.").

[5]      R. 334-335.

took both Citalopram and Prozac for a week, and that Buspar had caused Garza to "feel vacant."[6] Dr. Ybarra noted that Garza was applying for disability benefits and stated, "He did well on drawing a clock, but then went back and changed the hands to an incorrect position and said that he gets confused easily."[7] She noted the possibility of malingering and stated that he had "vague symptoms that don't fit into an illness."[8] No prescriptions were given.

On May 29, 2008, Garza was voluntarily admitted to Ben Taub complaining of suicidal ideation, depression, and fatigue.[9] Upon examination, Garza denied physical pain, and denied any current suicidal ideation or hallucinations.[10] He was discharged the same day and told to follow up with the psychiatric clinic.[11]

On June 16, 2008, Garza was treated at San Jacinto Methodist Hospital for suicidal ideation.[12] Garza reported having been depressed for three or four years, and that he had been on and off his medications. He denied having a plan for suicide. He

---

[6]     R. 334.

[7]     R. 334.

[8]     R. 335.

[9]     R.  531-564.

[10]    R. 540, 542.

[11]    R. 532.

[12]    R. 247.

stated that he did not want to hurt himself, but did not know of another way to get help for his depression.  He was released the same day.[13]

On June 27, 2008, Garza was seen again by Dr. Ybarra and complained of anxiety and depression.  Dr. Ybarra noted that he had tried multiple medications but was noncompliant with treatment and "had unrealistic expectations of the medication's effectiveness."

> We discussed the need to take a medication consistently and for at least a year.  We discussed therapy.  He was previously referred but did not attend.  We discussed Citalopram and starting at a low dose to improve compliance.  Patient stops medications if he experiences any side effects.[14]

Dr. Ybarra also noted that Garza "reports having problems with his memory and attention, but is able to recall details from previous visit and maintains focus throughout the visit."[15]  As in the previous visit, she noted the possibility of malingering, stating "patient's presentation [is] not consistent with his complaints."[16]

In August 2008, Garza began treatment with Mohamed Ahmed, M.D., for anxiety and depression.  On August 6, he was assessed with moderate depression and denied suicidal ideation.  The psychiatric exam yielded mostly normal results although

---

[13]    R. 247.

[14]    R. 331.

[15]    R. 331.

[16]    R. 332.

his "Mood/Affect" was recorded as "anxious, depressed."[17] He was prescribed Prozac and Ativan and referred to therapy.[18]  At a follow-up appointment on August 22, Garza reported that his anxiety was not improving.  His Prozac dosage was increased and he was referred to therapy.[19]  On October 3, 2008, Garza again reported that his anxiety was not improving.  Dr. Ahmed noted that Garza "did not like Prozac" and "has stop[p]ed it."   Prozac was discontinued and Dr. Ahmed started Garza on Strattera.[20]

On October 29, 2008, Dr. Ahmed completed a Mental Residual Functional Capacity Questionnaire.[21]  He reported that he had seen Garza the "past few weeks" for psychiatric evaluation and medication management.  Dr. Ahmed reported that Garza had persistent anxiety, with poor memory, energy, and ability to focus.  He

---

[17]     R. 313.  Dr. Ahmed's report of his psychiatric exam states, "Orientation: alert and oriented x3; Recent/Remote Memory: intact; Attention/Concentration: Intact; Language: Normal; Fund of Knowledge: fair; Mood/Affect: anxious, depressed; Speech Pattern: normal; Thought Processes: normal rate and content of thoughts; good abstract reasoning; Associations: intact thought associations; Abnormal Thoughts: no hallucinations, delusions, obsessions, or suicidal/homicidal ideation; Insight/Judgment: fair insight." *Id*.

[18]     R. 313-314.

[19]     R. 309-311.

[20]     R. 306-308.

[21]     R. 517-21.

completed a checklist that identified multiple symptoms.[22]   On a checklist headed

"Multiple Abilities and Aptitudes Needed to Do Unskilled Work," he assessed Garza

as "seriously limited, but not precluded" for multiple abilities, including remembering

work-like procedures, understanding short and simple instructions, and maintaining

attention for a two-hour segment.[23]  He stated that Garza's impairments would cause

absences from work more than four days per month,[24] and that Garza was not a

malingerer.[25]

On December 4, 2008, Garza had a follow-up appointment with Dr. Ahmed.

He reported that he was sleeping a lot, was disoriented, and that his anxiety was not

improving.  He had stopped taking the Strattera prescribed by Dr. Ahmed and was

"[n]ot compliant with plan."[26]  He was told to restart Strattera.[27]  On December 15,

Garza stated that he had stopped Strattera again because of stomach irritation, and that

Ativan made him feel sleepy.  His anxiety was not improving.  Dr. Ahmed

discontinued Ativan and started Klopnopin for anxiety; he also discontinued Strattera

---

[22]     R. 518.

[23]     R. 519.

[24]     R. 520.

[25]     R. 521.

[26]     R. 324.

[27]     R. 325.

and started Wellbutrin for depression.[28]   On February 2, 2009, Dr. Ahmed
discontinued Wellbutrin and started Lexapro for depression and anxiety.[29]  On March
4, 2009, Dr. Ahmed again noted that Garza was not compliant with his medication.[30]
He instructed Garza to continue with Lexapro and add hydroxyzine for anxiety.[31]  On
April 3, 2009, Garza reported that his anxiety was not improving, that he did not like
hydroxyzine because it made him feel "hollow headed," that he "occasionally" took
Klonopin but it made him feel "absent minded," and that he did not like Lexapro
because it made him confused.[32]  Garza was started on Zoloft and told to continue with
hydroxyzine; Klonopin and Lexapro were discontinued.[33]

On May 30 2009, Garza was voluntarily admitted to a Harris County Crisis
Stabilization Unit for emergency psychiatric treatment.[34]   He complained of

---

[28]   R. 321-22.

[29]   R. 319.

[30]   R. 636.

[31]   R. 637.

[32]   R. 633.

[33]   R. 635.

[34]   R. 583-627.

depression, inability to function socially, and feeling "lost," among other symptoms.[35] During his admission he was compliant with his medications and groups.[36] On June 2 and 3 he reported improvement in his anxiety and was observed talking, laughing, and interacting appropriately with peers.[37] On June 6, upon discharge to his home, he was "in no distress and stable on med[ication]s."[38]

After his discharge, Garza was treated by Dr. Sanjar in June and July 2009.[39] A form signed by Garza on July 8, 2009, the date of his hearing before the ALJ, reported that Garza was taking Abilify and Cymbalta for depression and Valium for anxiety.[40]

## II.   SUMMARY JUDGMENT STANDARD

Rule 56 of the Federal Rules of Civil Procedure mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a sufficient showing of the existence of an element essential to the

---

[35]   R. 614, 619, 621.

[36]   *See*, *e.g.*, R. 606, 616.

[37]   R. 595, 599.  *See* R. 588 ("[complains of] depression but client is observed interacting well and laughing and talking.  No [symptoms] of paranoia observed").

[38]   R. 583.

[39]   R. 686.

[40]   R. 694.

party's case, and on which that party will bear the burden at trial.[41]  "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[42]  "An issue is material if its resolution could affect the outcome of the action.  A dispute as to a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."[43]

## III.   STANDARD OF REVIEW

Judicial review of the Commissioner's denial of disability benefits is limited to two inquiries: first, whether the final decision is supported by substantial evidence on the record as a whole, and second, whether the Commissioner applied the proper legal standards to evaluate the evidence.[44]  "Substantial evidence" is relevant evidence that

---

[41]   *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Little v. Liquid Air Corp.,* 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc); *see also Baton Rouge Oil and Chem. Workers Union v. ExxonMobil Corp.,* 289 F.3d 373, 375 (5th Cir. 2002).

[42]   FED. R. CIV. P. 56(a).  *See Celotex Corp.*, 477 U.S. at 322–23; *Weaver v. CCA Indus., Inc.*, 529 F.3d 335, 339 (5th Cir. 2008).

[43]   *DIRECT TV Inc. v. Robson*, 420 F.3d 532, 536 (5th Cir. 2006) (internal citations and quotation marks omitted).

[44]   *See Audler v. Astrue*, 501 F.3d 446, 447 (5th Cir. 2007); *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005); *Masterson v. Barnhart*, 309 F.3d 267, 272 (5th Cir. 2002).

a reasonable mind might accept as adequate to support a conclusion.[45]  It is more than a mere scintilla and less than a preponderance.[46]

When applying the substantial evidence standard on review, the court scrutinizes the record to determine whether such evidence is present.[47]  In determining whether substantial evidence of disability exists, the court weighs four factors: (1) objective medical evidence; (2) diagnoses and opinions; (3) the claimant's subjective evidence of pain and disability; and (4) the claimant's age, education, and work history.[48]  If the Commissioner's findings are supported by substantial evidence, they are conclusive and must be affirmed.[49]  Alternatively, a finding of no substantial evidence is appropriate if no credible evidentiary choices or medical findings support the decision.[50]  The court may not, however, reweigh the evidence, try the issues *de*

---

[45]     *Audler*, 501 F.3d at 447 (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).

[46]     *Id.*; *Perez*, 415 F.3d at 461; *Newton v. Apfel*, 209 F.3d 448, 452 (5th Cir. 2000).

[47]     *Perez*, 415 F.3d at 461; *Myers v. Apfel*, 238 F.3d 617, 619 (5th Cir. 2001); *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994).

[48]     *Perez*, 415 F.3d at 462 (citing *Wren v. Sullivan*, 925 F.2d 123, 126 (5th Cir. 1991)).

[49]     *Id.* at 461 (citing *Richardson*, 402 U.S. at 390); *Watson v. Barnhart*, 288 F.3d 212, 215 (5th Cir. 2002).

[50]     *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001).

*novo*, or substitute its judgment for that of the Commissioner.[51]  In short, conflicts in

the evidence are for the Commissioner, not the courts, to resolve.[52]

## IV.   ANALYSIS

### A.   Statutory Basis for Benefits

Garza applied for Supplemental Security Income (SSI) benefits.  SSI benefits

are authorized by Title XVI of the Social Security Act, and provide an additional

resource to the aged, blind and disabled to assure that their income does not fall below

the poverty line.[53]  Eligibility for SSI is based on proof of disability[54] and indigence.[55]

A claimant applying to the SSI program cannot receive payment for any period of

disability predating the month in which he applies for benefits, no matter how long he

has actually been disabled.[56]  Thus, the month following an application fixes the

earliest date from which SSI benefits can be paid.  Eligibility for SSI, unlike eligibility

for Social Security disability benefits, is not dependent on insured status.

"Disability" is defined by the Act as the inability to "engage in any substantial

---

[51]     *Audler*, 501 F.3d at 447; *Masterson*, 309 F.3d at 272.

[52]     *Perez*, 415 F.3d at 461; *Masterson*, 309 F.3d at 272.

[53]     20 C.F.R. § 416.110.

[54]     42 U.S.C. § 1382c(a)(3) (definition of disability).

[55]     42 U.S.C. §§ 1382(a) (financial requirements).

[56]     *Brown v. Apfel*, 192 F.3d 492, 495 n.1 (5th Cir. 1999); 20 C.F.R. § 416.335.

gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."[57]  The law and regulations governing the determination of disability for SSI are the same as those governing determinations for Social Security disability benefits.[58]

###    B.    Determination of Disability

When determining whether a claimant is disabled, an ALJ must engage in a five-step sequential inquiry, as follows: (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals a listed impairment in Appendix 1 of the regulations; (4) whether the claimant is capable of performing past relevant work; and (5) whether the claimant is capable of performing any other work.[59]  The claimant has the burden to prove disability under the first four steps.[60]  If the claimant successfully carries this burden, the burden shifts to the Commissioner at Step Five

---

[57]    42 U.S.C. § 1382c(3)(A).

[58]    *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994).

[59]    *Perez*, 415 F.3d at 461; *Newton*, 209 F.3d at 453.  The Commissioner's analysis at Steps Four and Five is based on the assessment of the claimant's residual functional capacity ("RFC"), or the work a claimant still can do despite his or her physical and mental limitations.  *Perez*, 415 F.3d at 461-62.  The Commissioner assesses the RFC before proceeding from Step Three to Step Four.  *Id.*

[60]    *Perez*, 415 F.3d at 461; *Myers*, 238 F.3d at 619.

to show that the claimant is capable of performing other substantial gainful employment that is available in the national economy.[61]   Once the Commissioner makes this showing, the burden shifts back to the claimant to rebut the finding.[62]   A finding that a claimant is disabled or is not disabled at any point in the five-step review is conclusive and terminates the analysis.[63]

In this case, the ALJ determined at Step One that Garza had not engaged in substantial gainful activity since June 6, 2008, his application date.  At Step Two, he found that Garza had five severe impairments: (1) hypertension, (2) sleep apnea, (3) depression, (4) anxiety, and (5) obesity.  However, at Step Three, he found that Garza's impairments, considered singly or in combination, did not meet or medically equal an impairment listed in the Social Security regulations.

Before proceeding to Step Four, the ALJ found that Garza had the following residual functional capacity ("RFC"):

> After careful consideration of the entire record, the undersigned finds that the claimant has the [RFC] to lift/carry 50 pounds frequently and 25 pounds occasionally, and sit, stand and walk six of eight hours each in an eight hour day.  He has unlimited ability to perform pushing/pulling and gross and fine movements.  The claimant is able to climb stairs, ladders, ropes, scaffolds, and run.  He can bend, stoop, crouch, crawl,

---

[61]   *Perez*, 415 F.3d at 461; *Masterson*, 309 F.3d at 272; *Greenspan*, 38 F.3d at 236.

[62]   *Perez*, 415 F.3d at 461; *Newton*, 209 F.3d at 453.

[63]   *Perez*, 415 F.3d at 461 (citing 20 C.F.R. § 404.1520(a)).

balance, twist, and squat.  However, he is precluded from working around heights or other dangerous machinery.  The claimant further retains the capacity to get along with others, understand simple instructions, concentrate and perform simple tasks, and respond and adapt to workplace changes and supervision.  However, he should work in settings with limited contact with the public and other employees.[64]

At Step Four, the ALJ found that, based on his RFC, Garza was incapable of performing his past relevant work as an autobody repairman.  At Step Five, he found that Garza was capable of performing jobs that exist in the national economy, in particular, laundry worker, hand packager, and automobile porter.  He therefore concluded that Garza was not disabled.

### C.    Plaintiff's Arguments for Reversal

### 1.    Credibility

The ALJ determined that Garza's account of his symptoms was not entirely credible:

The claimant testified that he cannot work due to feeling nervous and anxious. He states that he isolates himself and that he cannot be around people.  He also reported memory problems with inability to stay focused. After careful consideration of the evidence, the undersigned finds that . . . the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment.[65]

Plaintiff argues that the ALJ's credibility finding was not supported by substantial

---

[64]    R. 26.

[65]    R. 27.

evidence and that, if the ALJ had found Plaintiff credible, he likely would have found Plaintiff disabled.

An ALJ's credibility finding is generally entitled to great deference.[66]   This Court may not reweigh the evidence, "'but may only scrutinize the record to determine whether it contains substantial evidence to support the Commissioner's decision.'"[67]  Although Plaintiff acknowledges that the credibility finding is within the province of the ALJ, he cites to Social Security Ruling 96-7p, which requires that the ALJ's finding not be based on "an intangible or intuitive motion" about the claimant's credibility, but rather must be "supported by evidence in the case record" and "sufficiently specific to make clear to the [claimant] and to any subsequent reviewers the weight the [ALJ] gave to the [claimant's] statements and the reasons for that weight."[68]

The ALJ's opinion cited detailed evidence supporting his conclusion that Garza was not fully credible.  First, the ALJ relied upon Dr. Ybarra's observations in 2008 that Garza may have exaggerated his symptoms to improve his disability case, that he

---

[66]   *McKnight v. Astrue*, 340 F. App'x 176, 181 (5th Cir. 2009) (citing *Newton v. Apfel*, 209 F.3d 448, 459 (5th Cir. 2000)); *Carrier v Sullivan*, 944 F.2d 243, 247 (5th Cir. 1991).

[67]   *Strempel v. Astrue*, 299 F. App'x 434, 439 (5th Cir. 2008) (quoting *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995)).

[68]   SSR 96-7p, 1996 WL 374186, at *4.

was noncompliant with treatment, that he had unrealistic expectations of medication's effectiveness, and that his presentation was not consistent with his complaints.[69]   The ALJ also noted that, although Garza sought emergency treatment in May 2008 for depression and suicidal ideation, he denied suicidal ideation upon examination, and was discharged the same day.[70]   He further relied on Dr. Ahmed's records from August 2008 and forward, which indicated that although Garza presented with symptoms of anxiety, depression, and attention deficit disorder, a mental status evaluation revealed no serious abnormalities other than anxious mood and affect.[71] Dr. Ahmed also noted repeatedly that Garza was noncompliant with his treatment plan.[72]  Finally, the ALJ discussed Garza's voluntary hospitalization on May 30, 2009, which concluded with a discharge on June 6, 2009 with Garza "in no distress" and "stable on med[ication]s."[73]   The ALJ concluded:

---

[69]     R. 27-28.  The ALJ specifically discussed Dr. Ybarra's notation that Garza had initially drawn a clock correctly, but later made changes "to indicate mistakes in his depiction."  *See* R. 335.

[70]     R. 28; *see* R. 531-540.

[71]     R. 28.  *See, e.g.*, R. 310 (August 2008), 634 (April 2009).

[72]     R. 28.  *See* R. 309-310 (on Aug. 22, 2008, Dr. Ahmed noted that Garza "did not like Lamictal" and "wants to stop it"; Lamictal was discontinued and Prozac was increased); R. 306 (on Oct. 3, 2008, Dr. Ahmed noted that Garza "did not like Prozac" and "has stop[p]ed it"); R. 324 (on Dec. 4, 2008, Dr. Ahmed noted that Garza was "[n]ot taking any antidepressant[s]" and was "[n]ot compliant with plan").

[73]     R. 28. *See* R. 583, 626.  Treatment notes from his hospitalization note several times
(continued...)

Considering the evidence in its entirety, the undersigned finds that the claimant's impairments simply do not rise to the level he alleges. This conclusion is based, in part, on the medical evidence indicating noncompliance with treatment, suspicion of drug abuse, over magnification of symptoms, and possible malingering.[74]

Plaintiff's briefing argues that the ALJ's credibility determination was in error. In support, Plaintiff cites to his own statements on his applications for benefits,[75] and to records from outside the relevant time period.[76]   Garza's subjective complaints cannot outweigh the medical evidence relied upon by the ALJ.[77]   The ALJ's

---

[73]   (...continued)
that, despite his reported symptoms, Garza was observed talking, laughing, and interacting appropriately with his peers.  *See, e.g.*, R. 588, 595, 599.

[74]   R. 28-29.

[75]   Plaintiff's Motion, at 9 (citing R. 125 (SSI application), R. 160 (request for reconsideration)).

[76]   Plaintiff's Motion, at 10-11 (discussing a visit to an unidentified doctor on May 17, 2005; a hospital admission on April 19, 2006; and various medical records regarding anxiety, depression, and sleep apnea from 2007).  Garza's period of eligibility began on January 25, 2008.  R. 23.  Moreover, the ALJ considered the medical evidence regarding Garza's diagnoses of depression, anxiety, and sleep apnea, and accommodated sleep apnea in Garza's RFC.  R. 26-27; R. 30 (specifically accommodating sleep apnea).

[77]   *Brown v. Astrue*, 344 F. App'x 16, 21 (5th Cir. 2009) (claimant's "subjective accounts of his illness cannot outweigh the countervailing facts"); *McKnight*, 340 F. App'x at 181 (ALJ's determination was supported by substantial evidence when claimant's testimony was "undermined by his medical doctors' reports of what the claimant stated regarding his medication and what the doctors observed"); *Vaughan v. Shalala*, 58 F.3d 129, 131 (5th Cir. 1995) (ALJ properly discounted claimant's subjective complaints because the symptoms alleged by claimant were inconsistent with the objective medical evidence).

determination, including his assessment of Garza's credibility, is supported by substantial evidence from the relevant time period, and therefore must be upheld.[78]

Plaintiff also challenges the ALJ's reliance on his own observations at the administrative hearing, which Plaintiff characterizes as application of the "sit and squirm" test.[79]   The ALJ observed that, during the hearing, Plaintiff testified appropriately, provided detailed historical information, and showed no deficits in attention and concentration.[80] The ALJ's observations supported his conclusion that Garza's impairments "do not rise to the level he alleges."[81]   This credibility determination is squarely within the province of the ALJ.[82] Such determinations may not be based solely on observation of a claimant's demeanor at the hearing, but rather

---

[78]     *See Perez*, 415 F.3d at 461.

[79]     Plaintiff's Motion, at 13 (citing, *inter alia*, *Muncy v. Apfel*, 247 F.3d 728, 736 (8th Cir. 2001); *Lovelace v. Bowen*, 813 F.2d 55, 59-60 (5th Cir. 1987)).

[80]     R. 26, 28.

[81]     R. 28.

[82]     *Falco v. Shalala*, 27 F.3d 160, 164 & n. 18 (5th Cir. 1994) ("The ALJ enjoys the benefit of perceiving first-hand the claimant at the hearing"); *see Price v. Astrue*, 401 F. App'x 985, 986 (although the ALJ must consider the testimony of the claimant, he or she "need not accept the claimant's contention as to the severity of his condition") (citing *Carrier v. Sullivan*, 944 F.2d at 247); SSR 96-7p, 1996 WL 374186, *5 ("In instances where the individual attends an administrative proceeding conducted by the adjudicator, the adjudicator may also consider his or her own recorded observations of the individual as part of the overall evaluation of the credibility of the individual's statements").

must be supported by substantial evidence.[83]  In this case, the ALJ's assessment of Garza's impairments is supported by the medical evidence of record.

Plaintiff further argues that the ALJ relied on improper factors when making his credibility determination.  In particular, Plaintiff objects to the ALJ's reliance on Garza's noncompliance with medication, the fact that his hospitalization that was close in time to the administrative hearing, his alleged social activities, and his past drug use.[84]  However, the Court need not decide whether any of these factors were inappropriate, nor address the alleged factual errors regarding Garza's travel to Mexico, because the ALJ's conclusion would remain supported even if these challenged factors were unavailable.  At bottom, when the ALJ's opinion is considered in its entirety, the conclusions regarding Garza's credibility and his RFC are well supported by substantial evidence.[85]  The ALJ provides multiple citations to

---

[83]    *Lovelace*, 813 F.3d at 59-60; *see Muncy*, 247 F.3d at 736.

[84]    R. 29.  Regarding noncompliance with medications, Garza argues that the ALJ improperly ignored the side effects that allegedly prevented him from taking the prescribed medications.  However, the ALJ specifically addressed this issue and rejected Garza's argument.  R. 29 ("[T]he record shows that claimant had numerous complaints of adverse side effects from medications.  However, he apparently only took his medications for about a week before discontinuing use.  He also expressly admitted noncompliance with treatment.  In any event, as one treating source indicated, medication should be taken on a consistent basis to achieve benefits.  And, even if stopping medication, a physician should be consulted, which the claimant failed to do.").

[85]    *See Cornett v. Astrue*, 261 F. App'x 644, 649 (5th Cir. 2008).  In *Cornett*, the claimant (continued...)

medical evidence from the period of eligibility.[86]

Summary judgment will be granted for Defendant as to Plaintiff's first argument for reversal.

### 2. Consideration of Medical Opinions

Plaintiff argues that the ALJ failed to properly evaluate the medical opinions of Drs. Ahmed and Boulos when assessing Garza's RFC.

Plaintiff first argues that the ALJ failed to give proper weight to the Mental Residual Functional Capacity Questionnaire completed by Dr. Mohamed Ahmed on October 29, 2008. On the form, Dr. Ahmed reported a GAF score of 45-50 and

---

[85]    (...continued)
challenged the ALJ's reliance on the claimant's prior conviction for possession of child pornography, which the ALJ said demonstrated the claimant's "disregard for truth" and "debased conscience," and used as a basis to discount claimant's testimony. *Id.* The Fifth Circuit nevertheless upheld the ALJ's decision, noting that when considered in its entirety, the decision contained detailed record analysis and set forth several reasons for attaching diminished weight to the claimant's testimony. *Id.*

[86]    Garza further argues that the ALJ erred when he failed to obtain a neuropsychiatric examination for Garza, citing to medical records from Dr. Ybarra in April 2008 stating that "neuro psych testing would be helpful in diagnosis and to evaluate for malingering" and that Garza "said he does not have time or money for transportation" to attend the examination. R. 335. However, Plaintiff does not indicate that he ever made a request to the ALJ for such an examination. Moreover, the record in this case does not establish that the examination was necessary to the ALJ's determination of Garza's disability. *See Leggett*, 67 F.3d at 566 ("The ALJ's duty to investigate, though, does not extend to possible disabilities that are not alleged by the claimant or to those disabilities that are not clearly indicated on the record"); *Pearson v. Bowen*, 866 F.2d 809, 812 (5th Cir. 1989) ("full inquiry does not require a consultative examination at government expense unless the record establishes that such an examination is *necessary* to enable the administrative law judge to make the disability decision") (internal citations and quotation marks omitted) (emphasis original).

checked multiple boxes indicating that Garza was "seriously limited" in multiple mental abilities required for unskilled work.[87]   Dr. Ahmed also checked a box indicating that Garza's impairments would cause absences from work more than four days per month.

The ALJ discussed Dr. Ahmed's assessment at length and evaluated it as an opinion of a treating source, but  ultimately concluded that Dr. Ahmed's opinion was "not well supported by the record" and therefore entitled to "minimal weight."[88]   The ALJ's conclusion was supported by his findings that Dr. Ahmed's opinion was not accompanied by rationale or a supporting report, and that "[c]areful review of his treatment notes reveals that he typically found little to no clinical deficits in his examinations" but rather that he "relied heavily on the claimant's own subjective reports."[89]   Although the ALJ noted that a claimant's subjective complaints often are relied upon in cases involving mental impairments, in this particular case the ALJ found the subjective complaints unsupported by medical evidence.   The ALJ further

---

[87]     R. 517-521.  *See* R. 519 (in chart headed "Mental Abilities and Aptitudes Needed to Do Unskilled Work," skills identified as "seriously limited" include remembering work-like procedures, understanding and remembering "very short and simple instructions," maintaining attention for a two-hour segment, and sustaining an ordinary routine without special supervision).

[88]     R. 29-30.   When Dr. Ahmed completed the form, he had seen Garza three times.  R. 306-314.

[89]     R. 30.

stated that the claimant's credibility was reduced because of possible malingering, noncompliance with treatment, and a history of drug use and incarceration.[90]

An ALJ may decrease reliance on treating physician testimony for good cause.[91] The Fifth Circuit has recognized good cause exceptions for physician's statements that "are brief and conclusory, not supported by medically acceptable clinical laboratory diagnostic techniques, or otherwise unsupported by evidence."[92]  In this case, the ALJ found that Dr. Ahmed's responses on the Mental RFC Questionnaire were not supported by the evidence of record and, in particular, by clinical evidence.  The records from Dr. Ahmed's examinations of Garza support the ALJ's finding that Dr. Ahmed's examinations relied heavily on the symptoms reported by Garza and, when assessing objective factors, noted that Garza's affect was "anxious" and "depressed" but found no other deficits.[93]  Therefore, the ALJ's decision to assign Dr. Ahmed's opinion minimal weight was supported by good cause.

Secondly, Plaintiff argues that "the ALJ erred in failing to assess and explain the weight given to the opinion of the State agency physician," Mark Boulos, MD.

---

[90]     R. 30.

[91]     *Newton*, 209 F.3d at 455-56; *Leggett*, 67 F.3d at 566; *Greenspan v. Shalala*, 38 F.3d 232, 237 (5th Cir. 1994).

[92]     *Greenspan*, 38 F.3d at 237.

[93]     *See, e.g.*, R. 310, 313.

Plaintiff argues that federal regulations require the ALJ to explain the weight given to the opinion of a State consultant.[94]  Defendant concedes the ALJ's failure to discuss Dr. Boulos' assessment was error, but argues that the error was harmless because the ALJ found greater limitations on Garza's abilities than Boulos found.  When an ALJ errs, the Court must determine whether the error was harmless.[95]  "'Procedural perfection in administrative proceedings is not required' as long as 'the substantial rights of a party have not been affected.'"[96]

Dr. Boulos completed a Mental Residual Functional Capacity Assessment on September 2, 2008.[97]  The form requested that the consultant evaluate Garza's capacity for 20 mental activities.  Of the 20 activities listed on the form, Boulos assessed Garza as "Not Significantly Limited" on eleven activities, including the ability to remember locations and work-like procedures, the ability to maintain regular attendance and be punctual, and the ability to interact appropriately with the general public.  For the other nine mental activities, Boulos assessed Garza as "Moderately Limited."  These activities included the ability to understand and remember detailed instructions, the ability to maintain attention and concentration for extended periods,

---

[94]     Plaintiff's Motion, at 19 (citing 20 C.F.R. § 416.927(f)).

[95]     *Audler v. Astrue*, 501 F.3d 446, 448 (5th Cir. 2007).

[96]     *Id.* (quoting *Mays v. Bowen*, 837 F.2d 1362, 1364 (5th Cir.1988)).

[97]     R. 301-304.

the ability to complete a normal workday and workweek without interruptions from psychological symptoms, the ability to work in proximity to others without distraction, and the ability to accept instructions and respond appropriate to criticism from supervisors.  Boulos did not choose "Markedly Limited" for any of the mental activities assessed.

In this case, although Dr. Boulos identified multiple impairments, he concluded that Garza was capable of working.  When asked to explain his summary conclusions in narrative form, Boulos stated as follows:

> Claimant can understand, remember, and carry out detailed but not complex instructions, make decisions, attend and concentrate for extended periods, accept instructions & respond appropriately to changes in routine work setting.[98]

He therefore recommended certain limitations, such as giving Garza "detailed but not complex" instructions.  The ALJ, however, accommodated these limitations when assessing Garza's RFC:

> The claimant further retains the capacity to get along with others, understand simple instructions, concentrate and perform simple tasks, and respond and adapt to workplace changes and supervision.  However, he should work in settings with limited contact with the public and other employees.[99]

---

[98]   R. 303.  Boulos further stated, "Limitations not wholly supported by [evidence of record]."  *Id.*

[99]   R. 26.

Therefore, any error from the ALJ's failure to explicitly address Dr. Boulos' opinion was harmless.[100]

Summary judgment for Defendant will be granted as to Plaintiff's second argument.

## V.   **CONCLUSION**

For the foregoing reasons, it is hereby

**ORDERED** that Plaintiff's Motion for Summary Judgment [Doc. # 16] is **DENIED**.  It is further

**ORDERED** that Defendant's Cross Motion for Summary Judgment [Doc. # 17] is **GRANTED**.

A separate final judgment will issue.

---

[100]     *See Audler*, 501 F.3d at 488.  In addition, the Court notes that Garza's reliance on Dr. Boulos' findings of "moderate" limitations provides questionable support for his position. Plaintiff argues that Boulos' assessment, if properly considered, would have resulted in a finding at Step Five that Garza was unable to perform other jobs existing in the economy.   In support, he cites to the testimony of the vocational expert at Garza's hearing, who agreed in response to Plaintiff's counsel's question that if a hypothetical individual were unable to maintain extended attention and concentration for one-third of the workday, that person would be not able to perform any jobs in the national economy.  R. 64-65.   However, Plaintiff cites to no authority that "Moderately Limited" on the form completed by Dr. Boulos should be interpreted as an inability to perform the activity for one-third of the workday.  Plaintiff's Motion, at 20-21.  Plaintiff appears to suggest that this Court could deem "moderate" to be synonymous with "occasional," *see id*. at 20-21 & n. 1, but cites to no authority that the terms are interchangeable.  In fact, when questioned by Plaintiff's counsel, the vocational expert testified that there "are a lot of different definitions around now" for moderately limited, that "it's a soft term," and that he "[did not] like that particular form [that uses the term "Moderately Limited]."  R. 63-64.

SIGNED at Houston, Texas, this 10th day of **June , 2011**.

Nancy F. Atlas
United States District Judge